**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, <br><br> v. <br><br> JAMES JULIAN PARR, <br> JOAN H. PARR, AND <br> WELLS FARGO BANK, N.A., <br> *Defendants*. | CASE NO. 3:10–cv–00061 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court upon Plaintiff's Motion for Default Judgment Against James Julian Parr and Joan H. Parr ("Mr. Parr" and "Mrs. Parr," individually, and collectively, "the Parrs"). (docket no. 20). In particular, Plaintiff has moved the Court for "entry of default judgment in favor of the United States: (1) against Defendant [Mr.] Parr for federal employment, unemployment, and income taxes, interest and penalties for the taxable periods ending 6/30/2000, 9/30/[20]00, 12/31/[20]00, 3/31/[20]01, 6/30/2001, 12/31/[20]01, 3/31/[20]02, 6/30/2002, 12/31/[20]02, 12/31/2003, 3/31/2004, 6/30/2004, 9/30/2004, 12/31/2004, 3/31/[20]05, 9/30/[20]05, 12/31/2005, 3/31/[20]06, 6/30/[20]06, 9/30/[20]06, 12/31/[20]06, 3/31/[20]07, 6/30/[20]07, 9/30/[20]07, 12/31/[20]07, [and] 3/31/[20]08, in the amount of $476,943.45 as of September, 27, 2010, plus penalties and interest pursuant to 28 U.S.C. § 1961(c) and 26 U.S.C. § 6621(a)(2) after that date until the full amount is paid; (2) declaring that [Mrs.] Parr does not have an interest in the real property; (3) ruling that [Mr.] Parr has an interest in the real property and that the federal tax liens attached to the real property at issue; and (4) foreclosing the federal tax liens and directing the real property to

1

be sold." *Id.* Additionally, the United States moves the Court for an order foreclosing the federal tax liens and an order permitting the sale of certain real property, described below. *Id.* Defendant Wells Fargo Bank, N.A. does not object to the Motion. *Id.* The United States has not requested a hearing, asking the Court to decide this matter on the submissions. For the reasons that follow, Plaintiff's Motion will be GRANTED in part and DENIED in part.

## I. BACKGROUND

The United States filed its Complaint on November 4, 2010. (docket no. 1). On December 6, 2010, Mrs. Parr was personally served with a Summons and Complaint, and Mr. Parr was served pursuant to a copy of the Summons and Complaint being left with Mrs. Parr at his residence. (docket nos. 6, 7). The only subsequent filing coming from either Mr. or Mrs. Parr was Mr. Parr's *pro se* Motion for Extension of Time to File Answer, filed on January 24, 2011, by which he requested a four month extension of time to file responsive pleadings. (docket. no. 8). By its Order dated February 23, 2011 (docket no. 10), the Court granted the Motion in part, allowing the Parrs sixty days to supply responsive pleadings. On May 26, 2011, pursuant to Federal Rule of Civil Procedure 55(a), and having received no additional filings from the Parrs, the Clerk of the Court entered default against them. (docket no. 19). On August 3, 2011, the United States moved the Court to enter default judgment in its favor (docket no. 20) and filed an accompanying Memorandum in Support of its Motion (docket no. 21).

## II. APPLICABLE LAW

"Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Although the clear policy of the Rules is to encourage dispositions of claims on their merits, entry of default judgment is committed to the discretion of the

2

court. *Id.* (citing *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)). Indeed, courts within the Fourth Circuit have noted that default judgment is especially appropriate "when the adversary process has been halted because of an essentially unresponsive party." *United States v. Martin*, No. 1:10CV116, 2011 WL 1467387, at *2 (N.D.W. Va. Apr. 18, 2011) (quoting *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citation omitted)).

Upon default judgment, a plaintiff's factual allegations, excluding determination of damages, are accepted as true for all purposes. *See Ins. Servs. of Beaufort, Inc. v. Aetna Cas. and Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 1992). "[U]nder [R]ule 54, a default judgment may not be entered without a full hearing *unless* the damages are liquidated or otherwise uncontested." *Id.* (emphasis added); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). Rule 55(b)(2), in turn, provides that a court "may conduct" a hearing to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

### III. DISCUSSION

#### A. Tax Liability

To establish a prima facie case of tax liability, the government need only "introduce[ ] into evidence the certified copies of the certificates of assessment. *United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir. 1980) (citation omitted). "Once the United States establishes a prima facie case, the burden shifts to defendants to prove that the [government's] determination was erroneous . . . ." *Id.*

In this case, when it comes to establishing tax liability, the United States provided Account Transcripts (docket no. 20, attach. 6) from the Internal Revenue Service ("IRS") along with a Declaration signed by Barbara Allen ("Ms. Allen"), a duly appointed Advisor Reviewer with the

3

IRS, who has reviewed the information concerning federal tax liability of, and balances due from, Mr. Parr. Ms. Allen's Declaration reveals that Mr. Parr is individually "indebted to the United States for tax liabilities . . . in the total amount of $476,943.45, plus statutory additions that will continue to accrue to the date of payment." (docket no. 20, attach. 4). Moreover, the United States has provided the Declaration of Christopher W. Sanders ("Mr. Sanders"), a trial attorney with the Tax Division of the Department of Justice, who has declared, with personal knowledge pursuant to his investigation under the Service Members Civil Relief Act, 50 U.S.C. App. § 501 *et seq*., that Mr. Parr is not a service member currently on active duty status. (docket no. 20, attach. 5). Mr. Sanders additionally declared that neither Mr. Parr nor Mrs. Parr are infants or otherwise incompetent. *Id.*

Ms. Allen's Declaration clearly establishes the amount by which Mr. Parr is in arrears in paying his federal tax obligations, and Mr. Sanders's Declaration assures the Court that the United States has diligently investigated whether any statutory or non-statutory barriers to default judgment exist. Mr. Parr has not contested the amount of damages alleged,[1] and the United States is seemingly aware of no barriers to default judgment. Accordingly, the government has made a prima facie case of Mr. Parr's tax liability and shifted the burden to him to refute the government's position. Mr. Parr, however, has set forth no evidence whatsoever, and therefore his liability is established for the unpaid taxes, penalties, and interest for the taxable periods contained in the Complaint. A hearing is unnecessary to conduct an accounting for damages under Rule 55(b)(2), and the Court may properly enter default judgment for the United States against Mr. Parr.

Notably, however, the government has not established any tax liability on behalf of Mrs. Parr. On the contrary, Ms. Allen's Declaration is expressly limited to "James Julian Parr,

---

[1] Indeed, in his Motion for Extension of Time to File an Answer, it appears that Mr. Parr acknowledges significant liabilities to the United States. *See* docket no. 61 (implying that he hoped to sell properties that he then owned or would soon acquire in order to satisfy his federal tax liabilities).

4

*individually . . . .*" (docket no. 20, attach. 4) (emphasis added). I have reviewed the Complaint as well as the documentation attached to the government's Motion for Default Judgment, and I have found nothing to indicate otherwise. As described below in Part B, the fact that only Mr. Parr—and not Mrs. Parr—is the proper subject of a default judgment on the matter of tax liability is immaterial when it comes to the government's request that the Court order the sale of certain real property to satisfy the default judgment. Nevertheless, Mrs. Parr's status as a non-liable party, coupled with her possibly having a possessory interest in the real property, bears on my determination of the proper distribution of any sale proceeds. I therefore endeavor to accurately describe the nature of the rights at stake before issuing a default judgment and accompanying order.

### B. Foreclosing Federal Tax Liens and Ordering a Sale

The government alleges that Mr. Parr acquired "Parcel One" in 1999 and "Parcel Two" in 1988. Compl. ¶¶ 19–20. Having established the tax liability of at least Mr. Parr, the United States seeks to foreclose the federal tax liens attached to the two parcels vis-à-vis Mr. Parr's tax delinquency and sell both parcels. Such foreclosure is contingent upon the Court declaring, as the government requests, (1): that federal tax liens have indeed validly attached to the real property; (2) that Mr. Parr has an interest in the real property; and (3): that Mrs. Parr has no such interest (or at least no interest that would preclude the United States from moving forward with the foreclosure and sale).

Looking first to condition (1) above, Section 6321 of Title 26 provides that the amount of any delinquent taxes shall be "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321; *United States v. Bowser*, 768 F. Supp. 2d 846, 849 n.1 (E.D. Va. 2011). Moreover, a "lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so

5

assessed (or a judgment against the taxpayer arising out of such liability) is satisfied . . . ." 26 U.S.C. § 6322.

Until recently, there may have been a colorable argument that federal tax liens could not attach to the two parcels by virtue of the Parrs holding both parcels as tenants by the entirety. *See United States v. Am. Nat'l Bank of Jacksonville*, 255 F.2d 504, 506 (5th Cir. 1958); *United States v. Hutcherson*, 188 F.2d 326, 331 (8th Cir. 1951) (both holding that no tax lien could attach to tenancies by the entirety because neither spouse possessed an individual interest in the property). In *United States v. Craft*, 535 U.S. 274, 276 (2003), however, the Supreme Court of the United States reversed a Sixth Circuit decision and held that "despite the fiction [of the tenancy by the entirety], each tenant possesses individual rights in the estate sufficient to constitute 'property' or 'rights to property' for the purposes of the lien . . . ." After *Craft*, then, tax liens can attach to property held by spouses in the form of a tenancy by the entirety. *Id.*; *see also* Kirsten O'Leary, Note, *Section 6321 Tax Liens on Tenancies by the Entirety after United States v. Craft*, 56 Tax Law. 917 (2003).

By operation of Sections 6321 and 6322 after *Craft*, it is clear that federal tax liens arose out of Mr. Parr's well established delinquency, and continue to exist today. It is also clear that condition (2) mentioned above, i.e., that Mr. Parr has an interest in the property at issue, is satisfied by virtue of the deeds to the two parcels that the government has included as Exhibits. (docket no. 20, attachs. 7, 8). What is not immediately clear, however, is whether it would be permissible for the Court to declare that Mrs. Parr has no interest in the real property sufficient to block the foreclosure and sale, such that the government can meet condition (3) mentioned above. As already noted, I have seen no contention from the government that Mrs. Parr is jointly or individually liable for tax delinquencies, so I must take care to ensure that the order of sale that the government requests can be issued without infringing on Mrs. Parr's possessory interest in the real property.

After considering the relevant case law on the matter, I find that although Mrs. Parr apparently holds the real property at issue in this matter as a tenant by the entirety, that status does not preclude the Court from ordering that the property be sold to satisfy her spouse's federal tax liability. That said, because Mrs. Parr does appear to have a possessory interest in the property—and the government has not alleged facts to the contrary in its Complaint—the extent to which that interest requires her to be compensated from the proceeds of the sale will require a hearing at a later date.

### 1. Tenancy by the Entirety in Virginia

Federal courts look to state law to determine a person's rights in real property that the United States seeks to reach. *United States v. Bowser*, 768 F. Supp. 2d 846, 849 (E.D. Va. 2011) (citing *Drye v. United States*, 528 U.S. 49, 58 (1999)). Virginia law recognizes tenancy by the entirety as a form of concurrent ownership. *Bowser*, 768 F. Supp. 2d at 849. In order for a court to find a tenancy by the entirety, it must find that the five "unities" are met. *Id.* The five unities are: title, estate, time, possession, and marriage. *Id.* (citing *In re Bunker*, 312 F.3d 145, 151 (4th Cir. 2002)). Under Virginia law, though, a thorough investigation of the five unities is not always required, since "a conveyance to a husband and wife together coupled with the intent that there be survivorship rights always creates a tenancy by the entirety." *Id.* (quoting *In re Zella*, 202 B.R. 712, 714 (E.D. Va. 1996)).

The deeds to the two pieces of real property at issue use nearly identical language to expressly convey real property to both Mr. and Mrs. Parr as "tenants by the entireties with the right of survivorship at common law . . . ." (docket no. 20, attachs. 7, 8). The 1999 deed, moreover, describes Mr. and Mrs. Parr as "husband and wife." While the 1988 deed does not use the "husband and wife" language, it still indicates that the parties shared the same last name at the time of the

7

conveyance. Under either *Zella* or the five unities test, therefore, it is sufficiently established that the Parrs own both parcels today as tenants by the entirety.

### 2. Forced Sale of Tenancies by the Entirety for One Tenant's Tax Liability

Although state law controls in determining the nature of the legal interest which a taxpayer has in the property, *Aquilino v. United States*, 363 U.S. 509, 513 (1960), the *consequences* that attach to those state-defined property rights are matters "left to federal law." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985) (quoting *United States v. Rodgers*, 461 U.S. 677, 683 (1983)). To that point, "[i]t is undisputed that the statutory language of 26 U.S.C. § 7403 allows a district court to order the sale of property that is jointly owned by a tax debtor and his or her spouse." *United States v. Ramirez*, 2009 WL 1293593, at *3 (S.D.W. Va. May 8, 2009) (citing *Rodgers*, 461 U.S. at 705)).

"[K]eeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes[,]" *Rodgers*, 461 U.S. at 711, the Supreme Court outlined four factors that a district court should consider in determine whether to exercise its discretion and order a sale of jointly owned property. *Id.* at 710–11. The factor test purports to balance the government's financial interest against the prejudice that would be suffered by a third party with a non-liable interest in the property. The third party with just such an interest in this matter, of course, is Mrs. Parr; however, because Mrs. Parr has failed to timely respond to any matter in the instant litigation, and has presented no evidence of any prejudice that might affect her interest, I need not engage in such prospective balancing on her behalf. I find instead that the government's financial interest in acquiring the back taxes owed by Mr. Parr is sufficient to order a sale under *Rodgers*, and in accordance with *Ramirez*. That said, I am reluctant to order that Mrs. Parr's tenancy by the entirety interest to go uncompensated following the sale of the real property. Pursuant to the accompanying

8

Order, the amount of the sale proceeds due to Mrs. Parr, if any remain after the satisfaction of Defendant Wells Fargo Bank, N.A.'s lien on the property is satisfied, will be determined at a later hearing.

## IV. Conclusion

While I decline to use the phrasing offered by the government in its Motion for Default Judgment, I conclude that the sale of the Parrs' real property is permissible by law. It is sufficiently established that Mr. Parr owes nearly half a million dollars in past tax liability (plus interest and penalties), and a default judgment against him for that amount is proper. Moreover, federal tax liens have attached to the real property despite Mrs. Parr's status as a non-liable tenant by the entirety. Finally, while I do not find that Mrs. Parr has "no rights" in the property, I do find that her rights, if any, as a tenant by the entirety are insufficient to preclude the United States from moving ahead with a sale of the property. Once the sale is conducted, if the proceeds exceed the value of the mortgage lien on the property held by Defendant Wells Fargo, Bank, N.A., then the Court will determine which portion of the remaining proceeds, if any, should go to the United States to satisfy Mr. Parr's tax delinquency, and which portion should be returned to Mrs. Parr to compensate her for her non-liable possessory interest in the property.

For the reasons stated above, the United States' Motion for Default Judgment is GRANTED in part and DENIED in part. The Clerk of the Court is directed to enter default judgment as follows:

(1) As against Defendant James Julian Parr, default judgment is hereby entered for the United States in the amount of $476,943.45 as of September 27, 2010, plus penalties and interest pursuant to 28 U.S.C. § 1961(c) and 26 U.S.C. § 6621(a)(2) after that date until the full amount is paid;

9

(2) As against Defendant Joan H. Parr, it is hereby declared that Mrs. Parr's interest in the subject property, if any, does not preclude the United States from moving forward with the sale of the property, pursuant to the accompanying Order. The extent to which Mrs. Parr's interest, if any, requires that she receive a distribution of any sale proceeds will be determined at a later hearing, to be scheduled after the sale of the property;

(3) The federal tax liens are foreclosed against the two pieces of real property at issue in this action, with Parcel One particularly described as:

> All that certain tract or parcel of land described in the Nelson County Land Books as containing 1.00 acre, more or less, (TM 64-a-79), together with all buildings, fixtures and improvements thereon and rights, privileges and appurtenances thereunto belonging, lying in the Massies Mill District of Nelson County, Virginia, being a portion of a tract originally containing 24.85 acres.
>
> Being the same property conveyed to James J. Parr and Joan H. Parr, husband and wife, as tenants by the entirety with the right of survivorship, by Deed dated March 5, 1999 from Christine C. Parr, widow by John C. Parr, her attorney-in-fact, which deed is recorded in Deed Book 436, page 641 in the Clerk's Office of the Circuit Court for the County of Nelson, Virginia.

And Parcel Two more particularly described as:

> All that certain tract or parcel of land with buildings and improvements thereon, lying and being situated in the Massies Mill Magisterial District of Nelson County, Virginia, fronting on State Route 151 and State route 675, and being all the residue of that certain tract of land that contains 25.85 acres by survey, conveyed unto M.J. Parr by deed dated February 3, 1930 recorded in the Clerks' Office for the Circuit Court of Nelson County in Deed Book 57, at page 39, LESS AND EXCEPT the following off conveyances:
>
> 1. ½ acre to John Smith by deed dated January 14, 1931, recorded in the aforesaid Clerk's Office in Deed Book 58, at page 227, lying near Shady Lane, and

2. 0.446 acres conveyed to George Woodson by deed dated February 5, 1931, recorded in aforesaid Clerk's Office in Deed Book 58, at page 2276, and

3. That certain lot conveyed unto Josephine Campbell by deed dated September 10, 1934 recorded in aforesaid Clerk's Office in Deed Book 61, at page 325, and

4. .016 acres conveyed to J.H. Quinn by deed dated June 7, 1937, recorded in aforesaid Clerk's Office in Deed Book 65, at page 401, and

5. 1 acre conveyed to Ivanhoe Cashwell by deed dated July 18, 1940, recorded in aforesaid Clerk's Office in Deed Book 68, at page 512, lying near Shady Lane, and

6. A lot described as 50 feet by 150 feet conveyed unto Lowell H. Thompson by deed dated January 8, 1943, recorded in aforesaid Clerk's Office in Deed Book 71, at page 291, lying near Shady Lane, and

7. 4.29 acres conveyed to James J. Parr, the male Grantee herein, by deed dated October 2, 1959, recorded in aforesaid Clerk's Office in Deed Book 94, at page 123, and

8. That certain lot described as 70 feet by 175 feet conveyed to M.A. Druskin by deed dated July 15, 1966, recorded in aforesaid Clerk's Office in Deed Book 108, at page 379, and

9. 2 acres conveyed unto James J. Parr, the male Grantee herein, by deed dated May 14, 1969, recorded in aforesaid Clerk's Office in Deed Book 117, at page 197, and

10. Perpetual right of way for water line to J.D. Woods, et als by deed dated February 15, 1940, recorded in aforesaid Clerk's Office in Deed Book 68, at page 45.

The said M.J. Parr departed this life on June 22, 1970 and by his will dated April 23, 1965, probated September 22, 1970, recorded in aforesaid Clerk's Office in Will Book S, at page 467, devised all of his real and personal property unto his wife, Christine C. Parr, the Grantor herein. This property is subject to an Appalachian Electric Power company easement recorded in aforesaid Clerk's Office in Deed Book 58, at page 72 and is subject to the mineral rights of Reading Iron company reserved in a deed to T.B. Kennedy recorded in

11

aforesaid Clerk's Office in Deed Book 29, at page 150.

Pursuant to the accompanying Order, the United States may sell the above-referenced property, and distribute the proceeds to Defendant Wells Fargo Bank, N.A. to satisfy Wells Fargo's mortgage lien on Parcel One; however, the Court will conduct a later hearing to determine the proper distribution of residual sale proceeds among the remaining parties.

It is so ORDERED.

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion and accompanying Order to all parties and all counsel of record.

Entered this  6th  day of October, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE